PEOPLE *v.* MARSHALL.

1. CRIMINAL LAW—PERSONAL NATURE OF LIABILITY.
    Criminal guilt under the law of this State is personal and individual fault.

2. SAME—MANSLAUGHTER—AUTOMOBILES—TURNING KEYS OF CAR OVER TO DRUNK.
    Owner of car who turned the keys thereof over to a person whom he knew to be drunk may not be held guilty of manslaughter of person who was killed by reason of the driver's operation of the car, where the killing was not counseled by him, was not accomplished by another acting jointly with him, and did not occur in the attempted achievement of some common enterprise (CL 1948, § 750.321).

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur, Criminal Law § 2.
[2] 5A Am Jur, Automobiles and Highway Traffic § 1166.
[3] 14 Am Jur, Criminal Law § 19.
[4] 15 Am Jur, Criminal Law § 463

3. SAME—EX POST FACTO LEGISLATION.
>   Crimes must be defined in advance, and not after action has been
>   taken (US Const, art 1, §§ 9, 10; Mich Const 1908, art 2, § 9).

4. SAME—MANSLAUGHTER—PERMITTING CAR TO BE OPERATED BY
>   DRUNK.
>   Defendant in prosecution for manslaughter who was also found
>   guilty of violation of statute making it a misdemeanor to
>   permit his car to be driven by a person under the influence of
>   intoxicating liquor and sentenced for crime of manslaughter
>   because the driver killed another in operating the car was
>   not guilty of manslaughter but was properly found guilty of
>   the other crime; hence, defendant is remanded for sentencing
>   for other crime (CLS 1956, § 257.625, subd [b]).

Appeal from Wayne; Gilmore (Horace W.), J. Submitted October 13, 1960. (Docket No. 85, Calendar No. 48,469.) Decided January 9, 1961.

William Marshall was convicted of involuntary manslaughter. Reversed. Remanded for sentence under additional conviction of permitting intoxicated person to operate motor vehicle.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Ronald J. Prebenda,* Assistant Prosecuting Attorney, for the people.

*John M. Dillon* (*Charles W. McDonald,* of counsel), for defendant.

SMITH, J. At approximately 3 a.m. on the morning of February 4, 1958, a car driven by Neal McClary, traveling in the wrong direction on the Edsel Ford Expressway, crashed head on into another vehicle driven by James Coldiron. The drivers of both cars were killed. Defendant William Marshall has been found guilty of involuntary manslaughter of Coldiron. At the time that the fatal accident took place, he, the defendant William Marshall, was in

bed at his place of residence. His connection with it was that he owned the car driven by McClary, and as the evidence tended to prove, he voluntarily gave his keys to the car to McClary, with knowledge that McClary was drunk.

The principal issue in the case is whether, upon these facts, the defendant may be found guilty of involuntary manslaughter. It is axiomatic that "criminal guilt under our law is personal fault."[1] As Sayre[2] puts the doctrine "it is of the very essence of our deep-rooted notions of criminal liability that guilt be personal and individual." This was not always true in our law, nor is it universally true in all countries even today, but for us it is settled doctrine.

The State relies on a case, *Story* v. *United States*,[3] in which the owner, driving with a drunk, permitted him to take the wheel, and was held liable for aiding and abetting him "in his criminal negligence." The owner, said the court, sat by his side and permitted him "without protest so recklessly and negligently to operate the car as to cause the death of another."[4] If defendant Marshall had been by McClary's side an entirely different case would be presented, but on the facts before us Marshall, as we noted, was at home in bed. The State also points out that although it is only a misdemeanor to drive while drunk,[5] yet convictions for manslaughter arising out of drunk driving have often been sustained. It argues from these cases that although it was only a misdemeanor for an owner to turn his keys over

---

[1] *People* v. *Sobczak*, 344 Mich 465, 470.
[2] Sayre, Criminal Responsibility for the Acts of Another, 43 Harv L Rev 689, 717.
[3] 57 App DC 3 (16 F2d 342, 53 ALR 246).
[4] 57 App DC 4.
[5] CLS 1956, § 257.625, subd (a) (Stat Ann 1960 Rev § 9.2325, subd [a]).

to a drunk driver,[6] nevertheless a conviction for manslaughter may be sustained if such driver kills another. This does not follow from such cases as *Story, supra.* In the case before us death resulted from the misconduct of driver. The accountability of the owner must rest as a matter of general principle, upon his complicity in such misconduct. In turning his keys over, he was guilty of a specific offense, for which he incurred a specific penalty. Upon these facts he cannot be held a principal with respect to the fatal accident: the killing of Coldiron was not counseled by him, accomplished by another acting jointly with him, nor did it occur in the attempted achievement of some common enterprise.

This is not to say that defendant is guilty of nothing. He was properly found guilty of violation of paragraph (b) of section 625 of the Michigan vehicle code[7] which makes it punishable[8] for the owner of an automobile knowingly to permit it to be driven by a person "who is under the influence of intoxicating liquor." The State urges that this is not enough, that its manslaughter theory, above outlined, "was born of necessity," and that the urgency of the drunk-driver problem "has made it incumbent upon responsible and concerned law-enforcement officials to seek new approaches to a new prob-

---

[6] CLS 1956, § 257.625, subd (b) (Stat Ann 1957 Cum Supp § 9.2325, subd [b]). By PA 1958, No 113, a third and subsequent offense under this section becomes a felony (Stat Ann 1960 Rev § 9.2325, subd [c]).

[7] CLS 1956, § 257.625, subd (b) (Stat Ann 1960 Rev § 9.2325, subd [b]).

[8] "(c) Any person who is convicted of a violation of paragraph (a) or (b) of this section shall be punished by imprisonment in the county jail or Detroit house of correction for not more than 90 days or by a fine of not less than $50 nor more than $100 or both such fine and imprisonment in the discretion of the court, together with costs of the prosecution.

"On a second or subsequent conviction under this section or a local ordinance substantially corresponding thereto, he shall be guilty of a misdemeanor and punished by imprisonment for not more than 1 year, and, in the discretion of the court, a fine of not more than $1,000."

lem within the limits of our law." What the State actually seeks from us is an interpretation that the manslaughter statute[9] imposes an open-end criminal liability. That is to say, whether the owner may ultimately go to prison for manslaughter or some lesser offense will depend upon whatever unlawful act the driver commits while in the car. Such a theory may be defensible as a matter of civil liability but Gellhorn's[10] language in another criminal context is equally applicable here: "It is a basic proposition in a constitutional society that crimes should be defined in advance, and not after action has been taken."[11] We are not unaware of the magnitude of the problem presented, but the new approaches demanded for its solution rest with the legislature, not the courts.

The view we have taken of the case renders it unnecessary to pass upon other allegations of error. The verdict and sentence on that count of the information dealing with involuntary manslaughter are set aside and the case remanded to the circuit court for sentencing on the verdict of the jury respecting the violation, as charged, of section 625, subd (b) of the Michigan vehicle code, discussed hereinabove.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.

---

[9] "Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the State prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court." (CL 1948, § 750.321 [Stat Ann 1954 Rev § 28.553]).

[10] Gellhorn, American Rights, 85, 86.

[11] See US Const, art 1, §§ 9, 10; Mich Const 1908, art 2, § 9.— REPORTER.