## PEOPLE v ALVARADO

Docket No. 68775. Submitted November 2, 1983, at Lansing.—Decided March 27, 1984.

Defendant, Delaphine A. Alvarado, was convicted of embezzlement of over $100, Bay Circuit Court, William J. Caprathe, J. Defendant was convicted specifically of embezzling $200 from her employer. She was sentenced to five years' probation and payment of restitution of $72,500, which amount was determined by the trial court at sentencing to represent the total amount claimed to have been embezzled from the employer during the year prior to the time of the charged offense. Defendant appealed, alleging that the trial court erred in ruling that if defendant were to testify regarding the source of a sum of cash she had in her purse at the time of her arrest the prosecution would be free to cross-examine her about purchases she had made, in failing to consider her financial resources or ability to pay in imposing restitution, in imposing restitution in an amount greater than that for which she was actually convicted of embezzling, and in considering her failure to testify at the sentencing hearing as evidence of her having embezzled the larger amount. *Held:*

1. The trial court erred in ruling on the testimony regarding the source of cash. The underlying purpose of introducing the evidence would have been to establish motive, which should have been done in the prosecution's case in chief. The error, however, was not of such magnitude as to require reversal.

2. The trial court's failure to consider defendant's financial situation and ability to pay the restitution ordered was an abuse of discretion and a violation of statute.

3. Restitution may be ordered in an amount greater than the loss for which a defendant is convicted. However, such restitution must be based upon substantial evidence that the defendant was actually responsible for the entire loss alleged. The evidence presented by the employer herein was not sufficiently persuasive to support the finding that defendant was responsi-

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 5 Am Jur 2d, Appeal and Error §§ 778, 798.
[2-5, 7] 21 Am Jur 2d, Criminal Law § 572.

ble for the $72,500 loss. Further, the court improperly treated defendant's refusal to testify at the sentencing hearing as evidence that she had embezzled the $72,500.

The conviction is affirmed, and the payment of restitution as a condition of probation is reversed.

CYNAR, P.J., concurred in upholding the conviction. He would find, however, that there was sufficient evidence to support an order of restitution and that the trial court did not improperly consider defendant's failure to testify. He agreed that the court improperly failed to consider defendant's ability to pay. He would vacate the restitution order and remand for a new hearing at which the defendant's ability to pay would be considered.

### OPINION OF THE COURT

1. CRIMINAL LAW — APPEAL — HARMLESS ERROR.

   A guilty verdict in a criminal trial should not be reversed on the basis of an erroneous evidentiary ruling of the trial court unless the ruling was so offensive to the maintenance of a sound judicial process that it cannot be regarded as harmless.

2. CRIMINAL LAW — PROBATION — RESTITUTION — STATUTES.

   Application of a statutory amendment requiring a trial court to make findings regarding a probationer's financial condition when imposing restitution does not constitute an *ex post facto* ruling where the amendment was enacted after the charged offense but well in advance of defendant's trial and does not assign criminal liability to conduct which was formerly legal or alter the definition of an offense (MCL 771.3[5][a]; MSA 28.1133[5][a]).

3. CRIMINAL LAW — RESTITUTION — SENTENCING.

   Restitution may be imposed as to the whole loss caused by a course of criminal conduct upon conviction of a crime arising out of that conduct; where restitution is ordered as a condition of probation there must be persuasive support in the record for the sentencing judge's conclusion that the losses for which restitution is ordered were caused by the defendant's criminal conduct.

4. CRIMINAL LAW — PROBATION — RESTITUTION.

   Making restitution a condition of probation is not a proper substitute for a civil proceeding to ascertain the precise amount of a defendant's liability to a complainant.

5. CRIMINAL LAW — PROBATION — RESTITUTION — BURDEN OF PROOF.

   The burden of proof is on the complainant, in a hearing to

determine whether restitution should be ordered as part of a sentence of probation of a defendant convicted of embezzlement, to show with some precision the amount that was embezzled and that the defendant embezzled it, and the defendant's refusal to testify at the hearing may not be used as evidence that he or she embezzled money other than that for which he or she was convicted; the burden of proof imposed on the complainant is not that of proof beyond a reasonable doubt.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY CYNAR, P.J.

6. CRIMINAL LAW — APPEAL — HARMLESS ERROR.

*The test of harmless error is two-fold: first, was the error complained of so offensive to the maintenance of a sound judicial system as to require reversal and, second, if not, was the error harmless beyond a reasonable doubt; an error may be found harmless if it can be said that in a trial free of the error not even one juror would have voted to acquit the defendant.*

7. CRIMINAL LAW — PROBATION — RESTITUTION.

*A sentencing court, in imposing restitution as a condition of probation, must take into account the financial resources of the probationer and the nature of the burden that payment of restitution or costs will impose, with due regard to his or her other obligations (MCL 771.3[5][a]; MSA 28.1133[5][a]).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Thomas J. Rasdale,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Stuart B. Lev),* for defendant on appeal.

Before: CYNAR, P.J., and BEASLEY and T. GILLESPIE,* JJ.

BEASLEY, J. Defendant, Delaphine Ann Alvarado, was convicted by a jury of embezzlement of over $100, contrary to MCL 750.174; MSA 28.371. Defendant was sentenced to five years probation, with the first year to be served in the county jail.

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

Her probation was conditioned upon payment of $72,500 as restitution to her employer at the rate of $1,547 per month. Defendant appeals as of right.

Defendant raises three issues on appeal, the first contesting an evidentiary ruling at trial and the second and third concerning her sentence.

Defendant was convicted of embezzling $200 from the self-service gas station where she worked as an attendant. She was arrested and charged as a result of surveillance conducted by a police officer, Det. Gwizdala, and the president of the firm that owned the station, Patrick Knox, on the morning of February 22, 1982. At trial Knox testified that the surveillance was set up after he contacted the county sheriff's department concerning apparent gasoline inventory shortages at the station.

On February 22, 1982, while defendant was working alone at the station, Gwizdala and Knox observed from various locations across the street and kept a count of the station's customers from 6:30 a.m. to 9:30 a.m. Using what he referred to as an "industry standard" on the average gasoline purchased per customer, Knox estimated the value of gasoline sold during those three hours at approximately $650. After 9:30 a.m., he entered the station with Gwizdala and asked defendant to determine how much gasoline had been sold that morning. Defendant brought up a total reading on the station computer of approximately $450. As this was approximately $200 less than estimated, Knox requested Michelle Revette, the station manager, to be present and she then came to the station.

The station was equipped with several means of determining the amount of gasoline sold and money taken in exchange. The gasoline pumps

individually recorded the amount of gasoline pumped by each. This reading was referred to as the mechanical reading and could not be manipulated without dismantling the pump. There were also two readings available from the computerized cash register in the station. One, referred to as the C3E, indicated the number of gallons pumped and their dollar value and was cleared every morning or every night, according to the station manager's testimony. These amounts could be altered by anyone who had access to a key which the employees knew was normally kept on a magnet under the manager's desk.[1]

The other reading, referred to as the C1E, could not be changed in this manner. The C1E or "grand shift totalizer" was not cleared daily, but kept a continuing record of gasoline sales. Revette testified that, while C3E readings were taken daily and dipstick readings from the gasoline tanks were taken every morning and evening, C1E and the mechanical pump readings were only taken every four or five months. Knox had instructed Revette to take mechanical, C3E and C1E readings after closing on the evening of February 21st.

Revette testified that the C3E and dipstick readings were routinely taken and recorded on shift checkout sheets by herself or the defendant at the end of their shifts. The attendants worked their shifts alone in the locked paybooth at the station. Normally, defendant and Revette were the only attendants who worked on weekdays.

When Revette was called in on February 22, she took the C1E reading and determined that $408.79 worth of regular and $259.10 worth of unleaded

[1] At the sentencing hearing, Knox and Revette testified that this key had been removed in December, 1981, and replaced in February, 1982. Revette testified that she, defendant and one other employee knew how to take C3E readings.

gasoline had been sold. The C3E reading showed $308.79 worth of regular and $159.10 worth of unleaded. Revette testified that the C1E reading corresponded with the mechanical pump reading. She took both readings again an hour later when she counted out the cash and found the same $200 difference in the readings and only enough cash to match the C3E reading.

Defendant was then arrested by Det. Gwizdala. According to the detective, when defendant was arrested, she voluntarily showed him that she had $400 cash in her purse. She told him the cash came from a Michigan income tax refund check and a withdrawal from the credit union.

After the court ruled that her testimony on the source of the $400 in her purse at the time of her arrest would open the door to cross-examination concerning receipts for purchases she made in 1981 totalling nearly $7,000, defendant did not testify at trial on the advice of her attorney. The prosecution would also then be permitted to introduce evidence that her 1981 income was only $8,700. The receipts and her 1981 Michigan income tax return were found in boxes in the station's back room after defendant's arrest.

On appeal, defendant first contends that the trial judge erred in making the above ruling. The relationship between the $400 and the 1981 purchases is tenuous. Indeed, there was no evidence that defendant used the money she supposedly obtained by cashing checks to pay bills of any sort, much less to make payments on the specific items referred to by the receipts. It is difficult to make a conceptual connection between items with a total value of $7,000 and the $400 found in defendant's purse.

The prosecution contended that the receipts and income from 1981 showed defendant to be an

individual who was financially overextended and
not in a position to withdraw $400 from her credit
union on February 3 and still be carrying that
money around on February 22. There was no
evidence that defendant used the money she sup-
posedly withdrew to make payments on the spe-
cific items referred to by the receipts.

The people urge that the receipts indicate defen-
dant was a "normal" individual who handled her
finances in a common fashion, withdrawing money
from her account only to pay outstanding bills. To
the extent the receipts showed defendant to be a
"normal" person, they lack probative worth. There
are undoubtedly numerous individuals who carry
cash at all times and pay their living expenses as
well. Without any showing that the money was
withdrawn to pay any particular bill, the proba-
tive value of this evidence for impeachment pur-
poses was "substantially outweighed by the danger
of unfair prejudice".[2]

In this connection, the trial judge stated:

"Well, I'm gonna rule that you're going to be allowed
to go into the receipts regarding—if they become rele-
vant in your cross-examination with respect to why she
was carrying $400.00 or why she had withdrawn sums
of $800.00 over that period of days. I think that's a
double relevancy and I—and I do agree that there is
one possibility here and that's that the jury is gonna
get the impression that she—why would she steal? She
had $400.00. And why would she steal if she was so
flush. I think you can get into the fact of—that her
expenditures for the previous year were more than her
income or close to her income and I'll allow you to do
that."

The conclusion seems inescapable that the un-
derlying purpose for introducing the evidence

---

[2] MRE 403.

would have been to show motive. Motive was not an issue that defendant's testimony would have raised and, thus, should have been introduced as part of the prosecutor's case-in-chief.[3] However, such an incorrect evidentiary ruling is not of a type so offensive to the maintenance of a sound judicial process that it cannot be regarded as harmless.[4] Consequently, while holding the ruling of the trial court to be erroneous, we do not consider the error to be of such magnitude as to require reversal.

Defendant's second and third issues on appeal concern her sentencing.

At sentencing, the trial judge referred to an allegation in the presentence report that defendant was responsible for additional losses of $75,-000 by her employer in 1981. Defendant denied the allegation through her attorney. Sentencing was adjourned and a hearing was held wherein the trial judge said that he found clear and convincing evidence that defendant was responsible for conversion of $72,500 in 1981. Defendant did not testify at the hearing, a fact explicitly noted by the sentencing judge.

Defendant appeals the imposition of $72,500 restitution as a condition of probation at sentencing for her conviction of embezzling $200, pointing out that the trial court failed to consider her financial resources or ability to pay. Defendant also claims that the trial court was without authority to impose restitution in an amount greater than that for which she was convicted.

MCL 771.3; MSA 28.1133 sets forth conditions of probation, including the following:

---

[3] See *People v Losey,* 413 Mich 346, 352; 320 NW2d 49 (1982).

[4] *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972).

"(5) If the court imposes restituion or costs as part of a sentence of probation, the following shall apply:

"(a) The court shall not require a probationer to pay restitution or costs unless the probationer is or will be able to pay them during the term of probation. In determining the amount and method of payment of restitution and costs, the court shall take into account the financial resources of the probationer and the nature of the burden that payment of restitution or costs will impose, with due regard to his or her other obligations."

Subsections (5)(b) and (6) also deal with probationers. Subsection (7) provides:

"If a probationer sentenced to pay restitution or costs is in default, he or she shall be subject to contempt proceedings unless the probationer shows to the satisfaction of the sentencing court that the default is not attributable to an intentional refusal to obey the order of the court or an intentional failure to make the payments."

The prosecution concedes that the trial court made no finding regarding defendant's financial condition. They contend that it was not required, as the above statute became law following the date of the offense. This argument lacks merit. The statute was amended following the charged offense, but well in advance of defendant's trial. Its application does not constitute an unconstitutional *ex post facto* ruling as urged by the prosecution. The statute does not assign criminal liability to conduct which was formerly legal, or alter the definition of an offense.[5] In addition, even prior to amendment of the statute, a sentencing judge was required by this Court's decisions to consider a

_____
[5] *People v Marshall,* 362 Mich 170, 174; 106 NW2d 842 (1961); *People v Ruzicka,* 19 Mich App 551, 552; 172 NW2d 916 (1969).

defendant's financial resources when imposing restitution.[6]

In the instant case, therefore, the sentencing judge's failure to consider defendant's ability to pay the substantial amount at issue violated the statute and was an abuse of discretion. The judge admitted there was no evidence of defendant's current assets or of whether she still held the funds allegedly embezzled. Also, defendant denied the uncharged acts which formed the basis of the order.

The prosecutor's argument that the restitution order merely guards against the possibility that defendant might win some lottery or sweepstakes at a later date does not pass muster. The trial court retains authority to amend its order to provide for restitution should defendant encounter unexpected enrichment during the probationary period.[7]

Defendant also asserts that restitution is limited to the amount that she was convicted of embezzling, namely, $200. She further contends that the trial court erred by giving consideration to her failure to testify at the sentencing hearing.

The evidence at the sentencing hearing consisted of further testimony by Knox and Revette. Knox gave figures on alleged gasoline inventory shortages per month in 1981. Knox testified that the shortages were computed from his own analysis of the station's daily record books from that year by comparing the manual dipstick readings with the C1E totals. He also referred to the em-

[6] *People v Lemon,* 80 Mich App 737, 744; 265 NW2d 31 (1978); *People v Gallagher,* 55 Mich App 613, 619; 223 NW2d 92 (1974), *lv den* 393 Mich 766 (1974); *People v Heil,* 79 Mich App 739, 748; 262 NW2d 895 (1977).

[7] MCL 771.2(2); MSA 28.1132(2); *People v Marks,* 340 Mich 495; 65 NW2d 698 (1954); *People v Graber,* 128 Mich App 185; 339 NW2d 866 (1983).

ployee time sheets and testified that the computations showed over 97% of the missing inventory was on weekdays, when defendant was scheduled to work. He also stated that the amount of missing monthly gallonage dropped significantly in June, 1981, when defendant was on vacation.

He testified that initially he had suspected that there was an equipment malfunction and had consulted the company that manufactured the station's pumps and computer equipment. The prosecution submitted a report by an analyst from the company that concluded that, rather than equipment malfunction, "the problem is entirely manual manipulation of inventory control by station employees". The dollar value of the gasoline shortages for 1981 was computed as approximately $75,000 by Knox. That amount was later reduced by the court to $72,500 by subtracting 3% for losses which allegedly occurred on weekends, to arrive at the total alleged loss which occurred during defendant's work hours.

At the end of the hearing, the trial judge stated:

"First of all, I think we ought to analyze what we're doing here. This is not a trial. This is not a matter in which a person has been charged with a crime and they're presumed to be innocent and they must be proven guilty beyond a reasonable doubt by the prosecutor before they can be convicted of that crime. That has already been done in this case. Ms. Alvarado was presumed to be innocent of the charge that we had the trial on. The evidence was presented. The jury felt that Ms. Alvarado was guilty beyond a reasonable doubt. I also sat here and listened to the evidence and the evidence satisfied me as well as the jury that Ms. Alvarado was guilty beyond a reasonable doubt of the charge in which she was convicted. I think there was an overwhelming amount of evidence as to her guilt. It was done in a surveillance manner.

"So, we are taking a person who has been definitely

convicted. Proved beyond a reasonable doubt to both the judge and the jury, that she has stolen from that station and that her method of doing so was to manipulate the part of the computer that is manipulatable, which is the C3E reading. Now, the question arises at the sentencing is, has she done this right along? And not whether she's been proven guilty of doing it right along, because she hasn't been charged and convicted or charged and—this determination is not whether she's guilty of doing it beyond a reasonable doubt. It's whether or not the evidence is such that the court should take into consideration what's happened there, in sentencing her.

"So, the standard moves to one of a—a preponderance of the evidence. In other words, I am entitled to consider activities and circumstances in a person's background in determining what the appropriate sentence would be within the guidelines of the crime to which she was found guilty. * * * And so, I had to then say, is there more evidence that she did do those things than there is evidence that she didn't?"

He concluded:

"I don't even think it comes close. The evidence is so strong, in my opinion, that she was involved in this $75,000.00 worth of theft through the year that it's more than even a preponderance of the evidence. To me it's clear and convincing and I don't think a reasonable person could come to another conclusion, but that she was."

In *People v Pettit*,[8] we said:

"Restitution may be imposed as to the 'whole loss caused by a course of criminal conduct upon conviction of a crime arising out of that conduct'. * * *

[8] 88 Mich App 203, 205-207; 276 NW2d 878 (1979), *lv den* 406 Mich 987 (1979), citing *People v Gallagher, supra,* p 618. See, also, *People v Nawrocki,* 8 Mich App 225; 154 NW2d 45 (1967); *People v American Medical Centers of Michigan, Ltd,* 118 Mich App 135, 159; 324 NW2d 782 (1982).

"Due process does not require the same type of proof which would be required in a civil proceeding. Nevertheless, the proper exercise of judicial discretion would require, and we hold that, in cases where restitution is ordered as a condition of probation, there must be persuasive support in the record for the sentencing judge's conclusion that the losses for which restitution is ordered were caused by the criminal conduct of the defendant."

In *Pettit,* we also indicated that making restitution a condition of probation is not a proper substitute for a civil proceeding to ascertain the precise amount of a defendant's liability to a complainant.[9]

We do not find such persuasive, overwhelming support for the sentencing judge's conclusion that defendant was responsible for $72,500 additional losses to the gas station. The trial judge heard the prosecution's evidence, took into account the fact that defendant did not take the stand during the sentencing hearing, and concluded:

"* * * we're not here weighing a preponderance of the evidence because we don't have any evidence whatsoever that she didn't do it. It's only evidence that she did. And I have to somehow weigh all the evidence that the prosecution has had to say whether all of their evidence contains within it, evidence that she didn't do it that outweighs the fact that she did do it."

The fact that the trial court treated defendant's refusal to testify at the sentencing hearing as evidence that she had embezzled $72,500 from the gas station is troublesome.[10] At trial, defendant

[9] *People v Pettit, supra,* p 208.

[10] For example, since the case against defendant regarding the $72,500 was entirely circumstantial, was it not the burden of proof of the gasoline station owner to show that no other employee or other person *could have* embezzled the funds?

invoked her constitutional right to remain silent[11] and did not testify. We are inclined to believe that, while it does not rise to the level of a constitutional right, she was entitled to decline to testify under oath at a sentencing hearing without having it used as evidence against her.

Perhaps there would be a risk to a defendant of a more severe sentence if she chose to decline to testify at a sentencing hearing, but we do not believe that risk should include having a refusal deemed to be evidence of embezzlement of a large sum of money. There is an inherent difficulty in permitting the litigation of a complex, difficult issue in an informal sentencing hearing without written pleadings or discovery. If the gasoline station had started a civil suit to collect monies allegedly embezzled by defendant, the burden of proof would have been on the gas station, each side could have had discovery, each side would have been entitled to a jury trial if requested, and both would have been entitled to the whole panoply of judicial safeguards surrounding civil trials.

We hold that the burden of proof was on the gasoline station owner to show with some precision the amount that was embezzled and that defendant embezzled that amount. Since the sentencing hearing is part of the criminal proceedings, we hold that defendant was entitled to decline to testify and that her declining to testify cannot be used as evidence that she embezzled other money than that for which she was convicted. However, the burden of proof imposed on the gasoline station owner in this regard is *not* proof beyond a reasonable doubt.

Apllication of these propositions, which we believe are consistent with the current state of the

---

[11] US Const, Am V; Const 1963, art 1, § 17.          .

law, to the facts and circumstances of this case, lead us to reject the trial judge's order making payment of $72,500 a condition of defendant's probation. In so ruling, we do not say that in no event may a trial judge make payment of an amount of money determined to have been embezzled a condition of probation.

In summary, we affirm defendant's conviction for embezzlement of the $200, but reverse as to that condition of defendant's probation which requires her to make restitution of $72,500 in monthly installments.[12] Defendant's responsibility for embezzlement of the total sum of $72,500 has not been sufficiently established and persuasively proved by the prosecution so as to justify requiring defendant to make restitution of that total as a condition of her probation.

As indicated, we also find error in the failure to establish defendant's ability to pay, but since we set aside the restitution provision as a conditon of probation, it is unnecessary to dwell further on this error.

Affirmed in part; reversed in part.

T. GILLESPIE, J., concurred.

CYNAR, P.J., *(concurring in part; dissenting in part)*. I concur with the majority opinion's disposition of the trial court's evidentiary ruling, though I am constrained to point out that harmless error analysis does not end with a determination that a given error is not so offensive to the maintenance of a sound judicial system as to require reversal. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). Our harmless error test is bifurcated; having found that the judicial system was not compro-

---

[12] See *People v Good,* 287 Mich 110; 282 NW 920 (1938); *People v Heil, supra.*

mised, we must still inquire whether the error was harmless beyond a reasonable doubt. *People v Gallon,* 121 Mich App 183, 188-189; 328 NW2d 615 (1982); *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974), *lv den* 395 Mich 810 (1975). We should be able to say that not even one juror would have voted to acquit defendant but for the error. *Gallon, supra.*

In this case, the evidence of defendant's culpability was quite strong. To the extent that the court's erroneous ruling prevented defendant from explaining the origin of the $400 found on her person at the time of arrest, I note that the essence of defendant's story reached the jury via Officer Gwizdala's testimony. He indicated that, upon informing him of the existence of the cash, defendant explained that "she had got a $75.00 check from the credit union and she had cashed an income tax check". In view of the strength of the prosecutor's proofs, I am not persuaded that any juror would have voted to acquit had defendant rendered her proferred testimony concerning the $400.

I disagree, however, with the majority opinion's analysis concerning the trial court's order making payment of $72,500 in restitution a condition of defendant's probation. I do find persuasive support in the record created at the sentencing hearing for a conclusion that defendant was responsible for the $72,500 loss she was order to restore. Moreover, I do not find the court's conclusion tainted by its reference to defendant's failure to testify at the sentencing hearing. In my view the court did not view that failure to testify as evidence; rather, it merely noted that it had no proofs to consider save those introduced by the prosecutor.

The court's remarks indicate that its decision

was squarely based upon the strength of the people's case:

> "I don't even think it came close. The evidence is so strong, in my opinion, that she was involved in this $75,000 worth of theft through the year that it's more than even a preponderance of the evidence. To me it's clear and convincing and I don't think a reasonable person could come to another conclusion, but that she was."

Defendant is correct in asserting that the court erred in failing to consider her ability to pay. Pursuant to statute, "the court shall take into account the financial resources of the probationer and the nature of the burden that payment of restitution or costs will impose, with due regard to his or her other obligations". MCL 771.3(5)(a); MSA 28.1133(5)(a), language added by 1982 PA 137, effective April 27, 1982. The prosecutor's argument that application of the amended language to this case would constitute an unconstitutional *ex post facto* ruling is invalid. The statute was amended following the filing of this charge, but well in advance of trial. It does not assign criminal liability to conduct formerly legal, nor does it alter the definition of an offense. *People v Marshall,* 362 Mich 170, 174; 106 NW2d 842 (1961); *People v Ruzicka,* 19 Mich App 551, 552; 172 NW2d 916 (1969). Finally, the statutory provision is consistant with antecedent case law. See *People v Lemon,* 80 Mich App 737; 265 NW2d 31 (1978).

I would affirm both the conviction and the findings of fact made at the sentencing hearing. I would vacate the restitution order and remand for a new hearing, at which defendant's ability to pay would be considered.