Rockingham. }
Nov. 6, 1940. } No. 3183.

STATE *v.* MICHAEL YOSUA.

*Stephen M. Wheeler*, County Solicitor, *Thomas P. Cheney*, Attorney-General, and *Frank R. Kenison*, Assistant Attorney-General (*Mr. Kenison* orally), for the State.

*William H. Sleeper*, for the defendant.

PAGE, J.   I. In the course of his opening statement, counsel for the defendant asserted that the crime charged could not be established unless it appeared that there was "such heedlessness and such a degree of carelessness, such gross carelessness that it amounts to a conscious disregard for the consequences and you twelve men in your experience in life know pretty well what the law seeks to do in felonies, serious crimes.  It seeks to punish the wicked or the guilty mind . . . ."   The County Solicitor interrupted at this point with the objection "you haven't got to have intent or any mind of guilt." With this Mr. Sleeper took issue.  The court suggested that counsel omit reference to the law and permit the court to define it at the proper time.  Mr. Sleeper showed unwillingness to comply, and after further colloquy the court ruled that "a certain consciousness of improper action" by the defendant was unnecessary to conviction. To this ruling the defendant excepted.

The trial justice correctly ruled that the "guilty mind" in the sense of active intent was not required.  *State* v. *Cornish*, 66 N. H. 329; *State* v. *Ryan*, 70 N. H. 196; *State* v. *Gilbert*, 89 N. H. 134.   Moreover, the defendant did not object when final instructions to similar effect were given, including the words: "It [recklessness] means heedlessness, rashness, indifference to consequences, it means negligence that is blameworthy or carelessness that has in it an element of conscious indifference as to the . . . consequences of such conduct." While we do not have to pass upon the correctness of this definition, the defendant's acceptance of the charge leaves him with no cause to complain.  *Abbott* v. *Ladd*, 85 N. H. 541, 542.

II. Upon cross-examination, one of the State's witnesses was faced with a statement which she admitted having signed, but whose

correctness she did not admit in every particular. Certain portions of the statement were read to her with the purpose of contradicting her direct testimony. Other portions were not read to her. The statement as a whole was not offered in evidence, nor was it even marked for identification.

In the course of final argument the defendant's counsel attempted to read and comment upon a portion of the statement that had not been offered in evidence. The trial justice excluded comment, subject to the defendant's exception. It is clear from the extended colloquy that everybody, including Mr. Sleeper, understood that the exclusion related only to passages in the statement not in evidence. There is no room for the assumption suggested in the defendant's brief that the court "excluded reference to the statement." Such portions of the statement as were in evidence were left open for proper comment. There was no occasion for confusion between what was in and what was not in. The ruling was correct.

III. In the course of a long argument that in the conduct of the case defendant's counsel had tried to mislead the jury, the County Solicitor remarked "Now as I construe it, taking up the defense which had been offered here, gentlemen, I cite first the item of confusion. It is well known in courtrooms that the object and the purpose of every lawyer who is defending a criminal is to throw confusion. The one that can throw sufficient dirt and dust in the jury's eyes to take their minds away from the main issue and when they get out in the juryroom some honest man may say, gentlemen, I think there's a doubt and because there's a doubt . . . ."

During the colloquy that followed an objection at this point, the Solicitor was asked by the court whether he referred to "this particular respondent's counsel." He replied: "I refer to any respondent's counsel." The defendant asked for an exception and one was noted.

The statement in its generalized form, is not supported by the common knowledge asserted as its basis. The generalization was both unsafe and improper. It called upon the jury to conclude from their non-existent knowledge of conduct in general that defendant's counsel had misconducted himself in this particular case.

The defendant has abandoned his exceptions to lengthy arguments that the actual conduct of his counsel showed a purpose to confuse the jury. Those arguments were inferentially proper and sustainable on the record. But it was improper for the Solicitor to add an argument based on the assumption of common knowledge contrary to fact. There was not even an attempt to avoid the prejudice by

withdrawal and instructions to the jury to disregard the unhappy remark. There was a violation of the rule of a fair trial, and the defendant objected. As a matter of law it cannot be said that there was no prejudice, *Burnham* v. *Stillings*, 76 N. H. 122, 129. This exception is sustained.

IV. In the course of argument by the County Solicitor, the following occurred: "Again there is sympathy for both sides but I do not need to talk to you about where sympathy lies in this case. I don't think I need to talk about that. *Mr. Sleeper:* Object to this argument about sympathy. It is prejudicial. Like to save exception." No ruling appears to have been made on the objection, therefore no question is before us. *Whipple* v. *Railroad*, 90 N. H. 261, 266.

*New trial.*

All concurred.