Hillsborough
No. 83-037
No. 83-088

THE STATE OF NEW HAMPSHIRE

v.

MARK A. ETZWEILER

THE STATE OF NEW HAMPSHIRE

v.

RALPH BAILEY

June 13, 1984

60

*Gregory H. Smith*, attorney general (*Michael A. Pignatelli*, assistant attorney general, on the briefs and orally), for the State.

*Keefe & Keefe*, of Wilton (*William Keefe* on the brief and orally), for the defendant Mark A. Etzweiler.

*James E. Duggan*, appellate defender, and *Joanne S. Green*, assistant appellate defender, of Concord (*Mr. Duggan* on the brief, and *Ms. Green* orally), for the defendant Ralph Bailey.

BATCHELDER, J., with whom BROCK, J., concurs. The issues raised in these consolidated cases involve the applicability of New Hampshire's motor vehicle laws and Criminal Code to a simple fact situation. The State and Mark A. Etzweiler, one of the defendants, have stipulated to the following facts. On July 30, 1982, the defendants, Mark Etzweiler and Ralph Bailey, arrived in Etzweiler's

automobile at the plant where both were employed. Bailey had been drinking alcoholic beverages and was, allegedly, intoxicated. Etzweiler, allegedly knowing that Bailey was intoxicated, loaned his car to Bailey and proceeded into the plant to begin work. Bailey drove Etzweiler's car away. Approximately ten minutes later, Bailey, driving recklessly, collided with a car driven by Susan Beaulieu. As a result of the accident, two passengers in the Beaulieu car, Kathryn and Nathan Beaulieu, were killed.

On August 26, 1982, the grand jury handed down two indictments charging Etzweiler with negligent homicide, RSA 630:3, I, and two indictments charging Bailey with manslaughter, RSA 630:2, I(b) (Supp. 1983). Subsequently, on April 6, 1983, the grand jury issued two additional indictments charging Etzweiler with negligent homicide as an accomplice. RSA 626:8; RSA 630:3, I.

Etzweiler filed motions to quash all indictments against him, and the Superior Court (*Pappagianis*, J.) transferred to this court the questions of law raised by the motions. The Superior Court (*Pappagianis*, J.) also denied Bailey's motion to dismiss the indictments against him and then granted Bailey's motion for an interlocutory appeal.

The cases were consolidated on appeal. We dismiss all indictments against Etzweiler and affirm the denial of Bailey's motion to dismiss.

### *Etzweiler*

The superior court transferred five questions of law. We need address only the first question: whether the legislature, in enacting RSA 630:3, I, and RSA 626:8, intended to impose criminal liability upon a person who lends his automobile to an intoxicated driver but does not accompany the driver, when the driver's operation of the borrowed automobile causes death.

### *The First Indictments*

The first indictments charge Etzweiler with negligent homicide, RSA 630:3, I:

> "[He] negligently entrusted his motor vehicle to one, Ralph Bailey, knowing that Mr. Bailey was drunk and was going to operate said motor vehicle . . . that Mr. Bailey while so operating said motor vehicle while drunk . . . did cross into the opposite lane and collide with a motor vehicle in which [decedents were passengers] . . . thereby causing decedent[s'] death[s]."

The requisites of the negligent homicide statute are met if a defendant negligently causes death. RSA 630:3, I. The State must

establish that the defendant failed to become aware of a substantial and unjustifiable risk that his or her conduct may cause the death of another human being. RSA 626:2, II(d). "The risk must be of such a nature and degree that his [or her] failure to become aware of it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation." *Id.*

In this case, however, death resulted not from the conduct of Etzweiler but from the conduct of Bailey, and the accountability of Etzweiler therefore must rest on the complicity of Etzweiler in Bailey's conduct.

■■ At common law, an individual, who did not actually engage in the felonious conduct, could be held criminally liable as a principal if he or she were present during the commission of the crime, aiding and abetting the perpetrator. *State v. Larkin*, 49 N.H. 39, 43 (1869); *State v. M'Gregor*, 41 N.H. 407, 414 (1860). Thus, the owner of an automobile who lent his or her car to an intoxicated individual, sat by that individual and permitted him to operate the vehicle, may be convicted as a principal to manslaughter if death results from the operation of the vehicle. *See, e.g., Story v. United States*, 16 F.2d 342 (D.C. Cir. 1926), *cert. denied*, 274 U.S. 739 (1927); *Freeman v. State*, 211 Tenn. 27, 362 S.W.2d 251 (1962).

■ At common law, Etzweiler could not have been guilty as a principal. He was not actually or constructively present during the commission of the offense, a necessary prerequisite. *See State v. Lacoshus*, 96 N.H. 76, 79–80, 70 A.2d 203, 206 (1950); *State v. Larkin supra*. *Cf. United States v. Van Schaick*, 134 F. 592, 604 (S.D.N.Y. 1904) (corporate officers, although not present when the deaths occurred, were held as principals to manslaughter because their duty and its breach were ongoing). If he aided and abetted Bailey, although not present at the commission of the crime, Etzweiler, at common law, may have been guilty as an accessory before the fact to involuntary manslaughter. *See, e.g., Stacy & Rusher v. State*, 228 Ark. 260, 306 S.W.2d 852 (1957). However, at common law, the crimes of principals and accessories before the fact were distinct and separate. *State v. Demos*, 81 N.H. 318, 320–21, 125 A. 426, 428 (1924).

In 1973, the legislature enacted the Criminal Code and created RSA 626:8, the accomplice liability statute. That statute abrogated the common-law distinction between principals and accessories and narrowly defined those situations in which an individual could be held criminally liable for the conduct of another. *See State v. Jansen*, 120 N.H. 616, 618–19, 419 A.2d 1108. 1110 (1980). Etzweiler's con-

duct, in lending his automobile to Bailey, must be measured against the standards set forth in the statute.

■ Etzweiler's conduct *may* fall within the statutory language defining negligent homicide. However, whether to impose criminal liability on Etzweiler involves an important policy decision of broad social consequences. The awesome deliberative task of making such a judgment should not, in the first instance, be thrust upon the juries in our trial courts but should be resolved through the legislative process to determine in what manner society seeks to deal with the criminal liability of those who permit unqualified operators to wreak havoc upon our public ways. This is a matter for legislative concern and is not a matter for judicial innovation. *See* ALA. CODE § 32-15-2 (1975); MICH. COMP. LAWS ANN. § 257.625(3) (Supp. 1983); N.J. STAT. ANN. 39:4-50 (West Supp. 1983); *see also People v. Marshall*, 362 Mich. 170, 173–74, 106 N.W.2d 843, 844 (1961).

### The Second Indictments

The second indictments charge Etzweiler with the offense of negligent homicide as an accomplice. RSA 626:8; RSA 630:3, I.

RSA 626:8 delineates all situations in which an individual may be held criminally liable for the conduct of another. One situation is when an individual "is an accomplice of [another] in the commission of the offense." RSA 626:8, II(c). Accomplice liability under RSA 626:8, II(c), is defined in two parts, RSA 626:8, III and IV. Section III sets forth the elements which must be present above, beyond, and regardless of the substantive offense. Section IV sets forth the elements of the substantive offense that must be present in order to charge the accomplice.

RSA 626:8, III, provides:

> "A person is an accomplice of another person in the commission of an offense if: (a) with the purpose of promoting or facilitating the commission of the offense, he aids . . . such other person in planning or committing it . . . ."

This section sets forth the *conduct element* of accomplice liability, *see State v. Vaillancourt*, 122 N.H. 1153, 1154, 453 A.2d 1327, 1328 (1982), and the necessary accompanying mental state, *see State v. Bussiere*, 118 N.H. 659, 663, 392 A.2d 151, 154 (1978).

■ Under section III, the State has the burden of establishing that the accomplice acted with the purpose of promoting or facilitating the commission of the substantive offense. *See id.* This encompasses the requirement that the accomplice's acts were designed to aid the primary actor in committing the offense, *see State v. Burke*,

122 N.H. 565, 570, 448 A.2d 962, 965 (1982), and that the accomplice had the purpose to "make the crime succeed," *State v. Goodwin*, 118 N.H. 862, 866, 395 A.2d 1234, 1236 (1978) (quoting 1 F. WHARTON, CRIMINAL LAW § 114, at 60 (Supp. 1978)). *See State v. White*, 622 S.W.2d 939, 945 (Mo. 1981), *cert. denied*, 456 U.S. 963 (1982) (aider must aid with the conscious object of causing that offense); *Commonwealth v. Cunningham*, 447 A.2d 615, 617 (Pa. 1982) (to aid, one must possess a shared intent to commit the offense). In other words, the accomplice must have the "purpose to advance the criminal end." MODEL PENAL CODE § 5.03, comment at 107 (Tent. Draft No. 10, 1960) (RSA 626:8 is based upon the Model Penal Code, *State v. Luv Pharmacy, Inc.*, 118 N.H. 398, 408, 388 A.2d 190, 196 (1978)).

Section IV sets forth the elements of the substantive offense that the State has the burden of establishing against the accomplice. "When causing a particular result is an element of an offense," the accomplice must act "with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense." RSA 626:8, IV; *see State v. Acton*, 115 N.H. 254, 257, 339 A.2d 4, 6 (1975) (accomplice acted with intent required to violate the substantive offense). *See generally* Robinson & Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond*, 35 STAN. L. REV. 681, 739–41 (1983).

Our interpretation of the accomplice liability statute effectuates the policy that an accomplice's liability ought not to extend beyond the criminal purposes that he or she shares. Because accomplice liability holds an individual criminally liable for actions done by another, it is important that the prosecution fall squarely within the statute.

Applying these statutory prerequisites, we turn to the indictments charging Etzweiler as an accomplice to negligent homicide.

"Mark Etzweiler acted as an accomplice in the conduct which caused the death[s] of Kathryn [and Nathan] Beaulieu when, with a purpose to promote and facilitate the offense of driving under the influence of alcohol, he aided Ralph Bailey in the commission of that offense by lending Ralph Bailey his 1980 AMC automobile, knowing Ralph Bailey was under the influence of alcohol, and encouraging him to drive it on a public way in such condition, and Mark Etzweiler thereby acted negligently with respect to the death[s] of Kathryn [and Nathan] Beaulieu. . . ."

The State has alleged that, with the purpose of promoting or facilitating the offense of driving under the influence of alcohol, Etzweiler aided Bailey in the commission of that offense. However, under our statute, the accomplice must aid the primary actor in the substantive offense with the purpose of facilitating the substantive offense—in this case, negligent homicide. Therefore, the indictments against Etzweiler must be quashed. *See State v. Shute*, 122 N.H. 498, 504, 446 A.2d 1162, 1166 (1982) (indictment must include all the elements constituting the offense).

Even if the indictments tracked the statutory language of RSA 626:8, III and IV, Etzweiler, as a matter of law, could not be an accomplice to negligent homicide. To satisfy the requirements of RSA 626:8, III, the State must establish that Etzweiler's acts were designed to aid Bailey in committing negligent homicide. Yet under the negligent homicide statute, Bailey must be unaware of the risk of death that his conduct created. RSA 630:3, I, RSA 626:2, II(d). We cannot see how Etzweiler could intentionally aid Bailey in a crime that Bailey was unaware that he was committing. Thus, we hold, as a matter of law, that, in the present context of the Criminal Code, an individual may not be an accomplice to negligent homicide. We need not reach the question of whether the statute provides for accomplices to manslaughter or murder.

Therefore, we answer the first question posed by the superior court in the negative in regard to both RSA 630:3, I, and RSA 626:8.

### Bailey

The superior court denied Bailey's motion to dismiss the indictments charging him with manslaughter, RSA 630:2, I(b) (Supp. 1983). This interlocutory appeal raises the question whether a statutory scheme encompassing two offenses which are allegedly defined by identical elements, but provide for different punishments, is unconstitutional on equal protection grounds. We hold that the two statutes, RSA 630:2, I(b) (Supp. 1983), and RSA 265:79, are not duplicitous, and thus we need not reach this constitutional issue.

The two statutes co-exist as a result of legislative deliberations. A cursory examination of the conduct sought to be penalized may reveal a distinction so thin as to approximate transparency. However, an analytical approach to the distinction demonstrates that in the manslaughter statute the recklessness of the defendant is of a greater magnitude and heightened degree of culpability, because it punishes recklessness with regard to death, while the motor vehicle statute punishes recklessness with respect to vehicular operations where death is an unforeseen but nevertheless tragic result.

RSA 630:2, I(b) (Supp. 1983), provides that a person is guilty of manslaughter when he or she "causes the death of another recklessly." This offense proscribes an undesirable result and requires that a defendant have a *mental state of recklessness with respect to the result of death*. Thus, the State, to obtain a conviction, must prove that a defendant was aware that his or her conduct created a substantial and unjustifiable risk of death, but consciously disregarded that risk. *See* RSA 626:2, II(c); REPORT OF COMMISSION TO RECOMMEND CODIFICATION OF CRIMINAL LAWS, comments at 35 (1969).

RSA 265:79 (Supp. 1983) prohibits the conduct of reckless driving and provides for a scheme of punishments, ranging from a fine and license revocation to possible incarceration. If death results from reckless driving, the person convicted of reckless driving is guilty of a class B felony.

*The mental state of recklessness in this offense applies to a defendant's conduct* and the State must show that a defendant was aware that his or her conduct created a substantial and unjustifiable risk of some forbidden harm, but was consciously indifferent to that risk. *State v. Dodge*, 103 N.H. 131, 133, 166 A.2d 467, 468 (1960); *State v. Soucy*, 97 N.H. 233, 234, 84 A.2d 838, 840 (1951) (vehicle must be operated to show a reckless disregard of the consequences); *see* RSA 626:2, II(c). The forbidden harm may include injury to the safety, rights or property of human beings but need not include death.

The recklessness proscribed in RSA 265:79 (Supp. 1983) clearly refers only to the defendant's conduct in vehicular operation, and not to the result of death. *See* RSA 626:2, I. The statute prohibits reckless driving, and conduct which constitutes reckless driving, *see State v. Langelier*, 95 N.H. 97, 58 A.2d 315 (1948), does so regardless of what harm actually results. *See State v. Turgeon*, 101 N.H. 300, 303, 141 A.2d 881, 883 (1958). The additional element of death must be proved only in order to classify the offense as a class B felony.

For example, an operator of a vehicle, whether intoxicated or sober, may operate his or her vehicle in a reckless manner on a lightly travelled highway under ideal driving conditions, swerve from the travel surface and strike an object, resulting in the death of a passenger. On such facts, the operator presumably would be properly indicted under RSA 265:79 because his or her recklessness relates to vehicular operation. The same operator, however, under similar conditions, may proceed through a crosswalk heavily occupied by pedestrians without giving heed to their presence. If death

results, the operator might appropriately be indicted under RSA 630:2, I(b), because an argument could be made (ultimately to be resolved by the trier of facts) that such recklessness related to death or the potential for death.

■ Reading these offenses as distinct and separate effectuates the intent of the legislature to enact a statutory scheme providing for a range of different offenses which arise from vehicular homicide, including manslaughter, reckless driving, death resulting and negligent homicide. This intent is evidenced by the provision found in the reckless driving statute, RSA 265:79 (Supp. 1983) which states "[t]his section shall not be construed to limit or restrict prosecution for manslaughter." *See* N.H.S. JOUR. 1009–10 (1973). Such a construction of these statutes avoids serious constitutional questions which might otherwise be raised. *See State v. Harlan,* 116 N.H. 598, 603–04, 364 A.2d 1254, 1258 (1976); *see also Appeal of Public Serv. Co. of N.H.,* 122 N.H. 919, 922, 451 A.2d 1321, 1323 (1982).

■ ■ Bailey, if he were reckless as to the result of death, may be convicted of manslaughter. However, predicated on the same indictment, Bailey could be found guilty of the lesser-included offense of reckless driving, death resulting. A lesser-included offense is one which "must necessarily be included in the greater . . . offense." *State v. O'Brien,* 114 N.H. 233, 235–36, 317 A.2d 783, 784 (1974). For a manslaughter conviction, the State must show that the defendant recklessly caused death, and this encompasses the requirement that the defendant acted recklessly. Thus, if the State establishes that Bailey committed manslaughter, it has necessarily established that Bailey committed reckless driving, death resulting. *See id.* If the evidence so warrants, *id.,* Bailey would be entitled to a lesser-included offense instruction.

*No. 83-037 remanded; No. 83-088 affirmed and remanded.*

BROCK, J., concurred; SOUTER, J., concurred specially; DOUGLAS, J., dissented in part; KING, C.J., with whom DOUGLAS, J., joined in part, dissented.

SOUTER, J., concurring specially: I concur with the results reached by Justice Batchelder, and I join in his opinion, save in two respects. Although there would be no value in an extended analysis at this point, I do not read RSA 626:8, IV, as my brother does. That section provides that

"[w]hen causing a particular result is an element of an offense, an accomplice in the conduct causing such result

is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense."

I read this language as an attempt to provide that a person may be criminally liable as an accomplice even if he does not act "with the purpose of promoting or facilitating the commission of an offense." RSA 626:8, III(a).

The attempt fails because the meaning of "accomplice" in section IV is unclear. Section III provides what is necessary to be an "accomplice . . . in the commission of an offense." Among other things, such an accomplice must have a "purpose" to promote or facilitate the commission of the offense. Section IV purports to determine when an accomplice in "conduct" causing a particular result is also an accomplice in the commission of the offense defined by reference to that result. Section IV does not, however, define this new sense of "accomplice" in conduct. One can guess that it means "accomplice" as used in section III minus the "purpose." This is no more than a guess, however. The confusion is probably explained historically by tracing the revisions in the Model Penal Code, on which New Hampshire's provisions are based. *Compare* Tent. Draft No. 1, § 2.04(3)(a), (b) and (4) *with* final draft § 2.06(3)(a) and (4); *compare* Tent. Draft No. 1, § 2.04(4) *with* RSA 626:8, IV. *See* P. Robinson and J. Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond*, 35 STAN. L. REV. 681, 733 (1983). Whatever the explanation, section IV fails to give any comprehensible, let alone fair, notice of its intended effect and is thus unenforceable. *United States v. Harriss*, 347 U.S. 612 (1954). It is of course open to the legislature to provide for accomplice liability more broadly than it has done in section III alone.

My second disagreement is about the comparative analyses of RSA 630:2, I(b) (Supp. 1983), defining manslaughter as recklessly causing death and RSA 265:79 (Supp. 1983) providing that driving recklessly is a class B felony when death results from it. I do not believe that the offenses so defined are distinguishable on the ground that the one requires proof of recklessness in causing death, while the other requires only proof of recklessness in the driving, but no proof of culpable mental state with respect to the resulting death. RSA 265:79 (Supp. 1983) does not expressly dispense with the general requirement of RSA 626:2, that a culpable mental state be proven with respect to each material element of an offense. I conclude from this that there is no conflict between those two statutes and that they must be read together. *See Hayes v. Hanson*, 12 N.H.

284, 290 (1841). It follows that a mental state of recklessness must be proven with respect to the element of causing death under RSA 265:79 (Supp. 1983), just as it must be proven under RSA 630:2, I(b) (Supp. 1983).

I therefore conclude that RSA 265:79 (Supp. 1983) proscribes no homicide that is not also proscribed by RSA 630:2, I(b) (Supp. 1983). Whether or not this is a desirable state of the statutory law is not for this court to decide. I would follow *United States v. Batchelder*, 442 U.S. 114 (1979), to find that the statutory scheme does not deny equal protection of the law.

DOUGLAS, J., dissenting in part in *Etzweiler:* For the reasons set forth below in Part I of the dissenting opinion of KING, C.J., I disagree with the majority opinion only insofar as it would quash the indictments against defendant Etzweiler as a principal.

KING, C.J., dissenting in *Etzweiler* (with whom DOUGLAS, J., joins in Part I) and concurring specially in *Bailey:* For the reasons that follow, I would affirm both sets of indictments against Etzweiler, as a principal to negligent homicide and as an accessory to negligent homicide. While I concur with the result of the majority opinion in *Bailey*, affirming the trial court's denial of Bailey's motion to dismiss, for the reasons set forth below, I disagree with the statutory analysis adopted by the majority. Thus, I reach the constitutional issues raised by Bailey.

A. *Etzweiler*

The superior court transferred five questions of law to this court. First, did the legislature, in enacting RSA 630:3, I, and RSA 626:8, intend to impose criminal liability for negligent homicide upon a person who voluntarily lends his automobile to an intoxicated driver, when the lender does not accompany the intoxicated driver, resulting in a homicide caused by the intoxicated driver's operation of the borrowed car?

Second, are the facts alleged in the indictments, assuming their truth, sufficient to establish proximate causation between Etzweiler's act of entrusting the car to an intoxicated driver and the subsequent deaths of Kathryn and Nathan Beaulieu?

Third, would judicial construction of RSA 630:3, I, or RSA 626:8, so as to uphold the validity of the indictments, constitute an unforeseeable enlargement of the respective statutes, in violation of the *ex post facto* clauses of the New Hampshire and United States Constitutions?

Fourth, should the second set of indictments be dismissed because it is "unfair and impermissible" for the State to reindict the defendant over seven months beyond the date of the original indictments?

Fifth, are the facts alleged in the second set of indictments sufficient to constitute criminal accomplice liability in violation of RSA 626:8?

### I. *The Original Indictments*

The original set of indictments charge that Etzweiler violated RSA 630:3, I, by negligently causing the deaths of Kathryn and Nathan Beaulieu. RSA 626:2, II(d) states:

"A person acts negligently with respect to a material element of an offense when he fails to become aware of a substantial and unjustifiable risk that the material element exists *or will result from his conduct.* The risk must be of such a nature and degree that his failure to become aware of it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation." (Emphasis added.)

The questions transferred by the superior court pose, in effect, a single question: whether it is foreseeable that the act of knowingly lending an automobile to an intoxicated driver will result in a fatal accident. *See* RSA 626:2, II(d). This question of criminal foreseeability is a question of fact for the trier of fact to resolve. Therefore, the original set of indictments should be upheld.

The trier of fact, in deciding the question of criminal foreseeability in each appropriate case, is guided by the statutory standard of criminal negligence set forth in RSA 626:2, II(d). Under this statutory standard, for conduct to be culpable it must constitute a gross deviation from reasonable conduct. RSA 626:2, II(d). This gross deviation standard of negligence limits penal sanctions to those cases where the negligent "actor is grossly insensitive to the interests and claims of other persons in society," MODEL PENAL CODE AND COMMENTARIES § 210.4, at 87 (1980), and where "the significance of the circumstances of fact would be apparent to one who shares the community's general sense of right and wrong." Hart, *The Aims of the Criminal Law*, 23 LAW & CONTEMP. PROBS. 401, 417 (1958).

If the State can establish that a person's purposeful conduct in lending his automobile to an intoxicated driver is itself a gross deviation from reasonable conduct and, as such, criminally negligent, the State must then demonstrate that the lender's conduct was a legal cause of the deaths. That is, the State must prove that the lender's criminally negligent conduct was a cause-in-fact of the deaths and also that the victims were members of the class of per-

sons foreseeably endangered by the lender's criminally negligent conduct. *See* LaFave & Scott, Criminal Law § 78, at 591–92 (1972).

The court asserts that the deaths in this case "resulted not from the conduct of Etzweiler but from the conduct of Bailey." This conclusion, made without benefit of a trial court record or a finding by the trier of fact, begs the fundamental question in this case which should be reserved for the trier of fact: that is, who caused the deaths, how were they caused, and were the deaths foreseeable. It should be noted that the case law cited herein suggests that there can be more than one legal cause of a death.

The court relies on common law in this jurisdiction providing that a principal to felonious conduct must "take some active part" in the criminal enterprise. *State v. Larkin*, 49 N.H. 39, 43 (1869). This court itself questioned the "logical foundation" for such a precondition to principal liability, but considered the requirement "too thoroughly established to be overturned by judicial action." *State v. Demos*, 81 N.H. 318, 321, 125 A. 426, 428 (1924).

Today, as the majority opinion concedes, Etzweiler's conduct must be measured against the standards set forth in the Criminal Code. The enactment of the Criminal Code effectively abrogated the common-law requirement that a principal must be, at a minimum, constructively present during the commission of the offense. In fact, the statutory language defining criminal negligence makes no mention of the constructive presence requirement.

The majority opinion also relies in part on the holding of the Michigan Supreme Court in *People v. Marshall*, 362 Mich. 170, 106 N.W.2d 842 (1961), in which the court overturned an involuntary manslaughter conviction of an automobile owner who voluntarily gave his keys to an intoxicated driver, with knowledge of the driver's intoxicated condition, resulting in a subsequent homicide. The Michigan Supreme Court held that lending an automobile to an intoxicated driver is, as a matter of law, a legal cause of the resulting homicide committed by the intoxicated driver with the borrowed car only when the lender is present in the automobile at the time of the accident. *Id.* In other words, the court held that, as a matter of law, it is foreseeable that a homicide will occur only when the lender of the automobile is present in the car when the fatal accident takes place.

The *Marshall* case can be distinguished from the case at hand on two important grounds. First, in *Marshall*, the Michigan Supreme Court reviewed a specific record and concluded that the trial court erred, as a matter of law, in ruling that the automobile owner was guilty of involuntary manslaughter. In effect, the Michigan Supreme

Court held that as a matter of law, based on the record, a showing of foreseeability was not made by the prosecution. Here, by this interlocutory transfer, Etzweiler is asking this court, without benefit of a trial court record, to hold that he is not criminally negligent as a matter of law, and thereby judicially amend RSA 630:3, I, to preclude the imposition of criminal liability upon defendants like Etzweiler. We should not be prepared to conclude, without a trial court record, that criminal foreseeability never exists if the owner of the automobile is not present in the car when the intoxicated driver kills another. Of course, if the facts revealed at trial indicated that no reasonable jury could find that Etzweiler should have been aware of the risk created by his conduct, and the trial court denied a directed verdict, Etzweiler could appeal to this court. However, until there is a trial court record, such a judgment should not be made.

Courts in other jurisdictions have upheld both the convictions and the indictments of persons charged as principals to criminal homicide although those persons were not present at the scene of the offenses when the deaths occurred. These cases appear to rest on the rationale that despite the defendants' absence when the homicides were committed, their gross negligence or unlawful conduct was a legal cause—although not the only legal cause—of the deaths. That is, the defendants' *own conduct* provided an instrumentality which caused the deaths. *People v. Kemp*, 150 Cal. App. 2d 654, 310 P.2d 680 (1957) (drag-race driver criminally liable as a principal for resultant death even though his car was not involved in the fatal accident); *United States v. Van Schaick*, 134 F. 592 (C.C.S.D.N.Y 1904) (owners and operators of steamship destroyed by fire liable as principals for deaths caused by their criminal negligence notwithstanding their absence from the ship).

In the cases in which a defendant loaned his car to an intoxicated driver and was present in the automobile sitting on the front seat beside the intoxicated driver when a fatal accident occurred, some courts have not relied upon the presence of the defendant at the moment of death as an element in assigning liability to the lender of the car as a principal. *Freeman v. State*, 211 Tenn. 27, 362 S.W.2d 251 (1962) (lending car to an intoxicated driver was a criminally negligent act and a legal cause of the resulting death, regardless of lender's presence or absence in car); *State v. Hopkins*, 147 Wash. 198, 265 P. 481 (1928) (presence of lender of car during fatal accident was not a material element in lender's conviction of manslaughter); *see also Chalmers v. Harris Motors*, 104 N.H. 111, 114–15, 179 A.2d 447, 450 (1962) (in an action for damages, this court recognized that the negligent entrustment of an automobile to an intoxicated driver by the owner of the automobile, who was not

present in the automobile during the fatal accident, may, as a matter of law, be a direct and proximate cause of the wrongful death of a passenger in the automobile).

Second, the *Marshall* court affirmed the defendant owner's conviction, under Michigan Compiled Laws Annotated section 257.625(b) (1977), for knowingly permitting a person "who is under the influence of intoxicating liquor" to drive the owner's car. 362 Mich. at 173, 106 N.W.2d at 844 ("In turning his keys over, he was guilty of a specific offense. for which he incurred a specific penalty."). There is no such statutory violation in New Hampshire. In overturning the owner's conviction of involuntary manslaughter, the Michigan Supreme Court apparently viewed this statute as the exclusive criminal remedy in the case. *See id.*

Finally, the court today holds that the question whether to impose criminal liability on Etzweiler should be resolved by the legislature and not by the juries in our trial courts. The court chooses to defer to the legislature despite conceding that "Etzweiler's conduct *may* fall within the statutory language defining negligent homicide." The court reasons that the imposition of criminal liability on Etzweiler is such an "awesome deliberative task" that "judicial innovation" should give way to the "legislative process."

The court's rationale, even though limited to a very specific fact pattern, is nevertheless troubling in its implications. That is, whenever cases arise involving exceptional conduct defined by the language of the negligent homicide statute, the court will wait until the legislature specifically proscribes that conduct by amendment to the Criminal Code before the court allows these cases to reach juries. The merit of such an approach is undiscernible when conduct such as Etzweiler's is already fully contemplated by our existing criminal laws. Further, such an approach may render the negligent homicide statute ineffective.

For the foregoing reasons, I answer question number one "yes" and question number three "no." I would further hold that question number two is a question of fact for the trier of fact to resolve.

II. *The Second Indictments*

In construing RSA 626:8—which imputes criminal liability to a person for the conduct of another—to determine whether the indictments in question properly state an offense under that statute, one must define the pertinent statutory language by reference to the definitions provided in the statute itself. *See Appeal of John Denman*, 120 N.H. 568, 572, 419 A.2d 1084, 1087 (1980); RSA 21:2.

RSA 626:8, I and II(c), assign criminal liability to someone who is "an accomplice of another person in the commission of an offense."

This phrase is defined by other provisions in the statute which designate three sets of circumstances under which a person may become "an accomplice of another person in the commission of an offense." They are:

> (1) if, "with the purpose of promoting or facilitating the commission of that offense, he solicits such other person in committing it, or aids or agrees or attempts to aid such other person in planning or committing it," RSA 626:8, III(a); or

> (2) if "his conduct is expressly declared by law to establish his complicity," RSA 626:8, III(b); or

> (3) if, "[w]hen causing a particular result is an element of an offense," the person is "an accomplice in the conduct causing such result" *and* "he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense."

RSA 626:8, IV.

While the statutory phrase "accomplice in the conduct causing [a particular] result" provided by RSA 626:8, IV, is not explicitly defined in the statute, when viewed as part of a totality it is implicitly defined by RSA 626:8, III(a). Under section III(a), a person is an accomplice in the principal's criminal conduct causing a particular result if, with the purpose of promoting or facilitating the principal's criminal conduct, the person solicits that conduct, or aids or agrees or attempts to aid that conduct. Section III also assigns liability in those situations in which the accomplice actively seeks the criminal *result* by aiding and abetting the principal without caring precisely how the principal achieves that result.

Therefore, for a person to be criminally liable under RSA 626:8, IV, for the crime of a principal, that person must act *purposefully* with respect to the principal's criminal *conduct*. However, with respect to the *result* of the principal's criminal conduct, section IV requires a showing that the person acted with the same state of mind required of the principal. *See* MODEL PENAL CODE AND COMMENTARIES, Tent. Draft No. 1, Comments § 2.04(4), at 34 (1953); Robinson & Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond*, 35 STAN. L. REV. 681, 739–40 (1983); LaFAVE & SCOTT, CRIMINAL LAW § 65, at 517 n.34. A showing that a person merely acquiesced in or consented to a principal's conduct is not enough to prove purposefulness under section III. *See State v. Luv Pharmacy, Inc.*, 118 N.H. 398, 408–09, 388 A.2d 190, 196–97 (1978). Rather, it must be demonstrated that the person participated actively in the principal's conduct. *See State v. Vaillan-*

*court*, 122 N.H. 1153, 1154, 453 A.2d 1327, 1328 (1982) (a showing of knowledge and mere presence at the scene of a crime is insufficient to support a conviction for accomplice liability).

The second indictments properly allege that Etzweiler acted purposefully to "promote and facilitate" Bailey's criminal conduct—Bailey's alleged intoxicated driving—causing the deaths, and "aided" Bailey by "encouraging" him in that conduct. The indictments also allege, as they must, that Etzweiler "thereby acted negligently with respect to" the resulting deaths. Of course, to obtain a conviction of Etzweiler, the State must prove each alleged act and mental state as well as the causal link between *Bailey's* driving and the resulting deaths. Finally, it should be noted that to find Etzweiler guilty, the jury must conclude that he was criminally negligent under RSA 626:2, II(d), a showing of culpability substantially higher than ordinary civil negligence.

While other proffered interpretations of RSA 626:8 may be plausible, they effectively give principal meaning to either section III or section IV of the statute, at the expense of the other section. The majority opinion, for example, essentially reads section IV of RSA 626:8 out of the statute, notwithstanding the court's failed attempt to infuse that section with meaning. The statutory analysis herein satisfies the rule of statutory construction that all parts of a statute be read as meaningful and consistent parts of a whole. This analysis also fulfills the court's duty to interpret a statute so as to effectuate its legislative intent: here, to inculpate persons who purposely further the criminal conduct of others while grossly unaware of the substantial and unjustifiable risks attending that criminal conduct.

The court's holding that as a matter of law "a person may not have a purpose of having another commit negligent homicide" is problematic. First, this holding is not supported by the language of RSA 626:8. Second, the court's holding requiring purposeful conduct with respect to the result of the principal's offense effectively precludes criminal liability for aiding any homicide other than intentional homicide. The justification, theoretical or otherwise, for such an approach to accomplice liability is imperceptible.

A pattern of case law in other jurisdictions supports the view that the State properly indicted Etzweiler as an accomplice to Bailey's negligent homicide even though Etzweiler was absent from the car, and neither he nor Bailey acted "purposely" with respect to the resulting deaths. *Stacy & Rusher v. State*, 228 Ark. 260, 306 S.W.2d 852 (1957) (traffic fatality resulting from criminal negligence of intoxicated driver; accomplice liable for involuntary manslaughter even though absent when homicide occurred); *State v. DiLorenzo*, 138 Conn. 281, 83 A.2d 479 (1951) (explosion of illegal still; defend-

ant liable as accomplice to involuntary manslaughter even though absent from the scene of the fire); *State v. McVay*, 47 R.I. 292, 132 A. 436 (1926) (boiler explosion; liability as accessory to manslaughter despite absence from scene of explosion).

The case law rejecting the absent abetter defense to accomplice liability is applicable to the instant case under the analysis of RSA 626:8 outlined above. Etzweiler, although absent from the car at the time of the fatal accident, purposely lent his automobile to Bailey with the imputed knowledge that Bailey would drive while intoxicated, a criminal offense, and was alleged thereby to be grossly unaware of the substantial and unjustifiable risk that death would result from Bailey's alleged negligent conduct.

Accordingly, I would answer question number 5 "yes." I turn to the remaining transferred questions pertinent to this analysis of RSA 626:8.

*Question 1.* In enacting RSA 626:8, the legislature intended that the statute be applied according to its terms and, therefore, by inference, intended to impose criminal liability upon a person who not only lends his automobile to an intoxicated driver, with death resulting, *but* who does so with the purpose of promoting or facilitating or, as here, encouraging the intoxicated driving. Certainly, it was not the legislature's design to exculpate one who purposely furthers another's criminal conduct while grossly unaware of a substantial and unjustifiable risk that death will result. *See* RSA 626:8; 630:3, II (driving while intoxicated, death resulting); 626:2, II(d).

*Question 2.* RSA 626:8 does not require a causal connection between Etzweiler's complicity and the resulting deaths. That is, it is not necessary to show that the *result* of the principal's crime would not have occurred but for the conduct of the accomplice. *See* LaFave & Scott, *supra* § 64, at 512 & n.111. It is sufficient that the accomplice's aid and encouragement facilitated the result, even if the result would have transpired without the accomplice's assistance. *See Jacobs v. State*, 184 So.2d 711, 716 (Fla. App. 1966); *State v. Tally*, 102 Ala. 25, 69–70, 15 So. 722, 738–39 (1894). However, RSA 628:8 does require a causal connection between *Bailey's* conduct and the deaths.

*Question 3.* This question asks, in effect, if RSA 626:8 is construed so as to make the second indictments valid, would the *ex post facto* clause of the New Hampshire Constitution prohibit this construction. This inquiry is limited to the question whether the second set of indictments enlarges the meaning of the Criminal Code in an unforeseen way by attaching criminal liability to conduct that persons of normal intelligence would not have known was prohibited, or

by invoking statutes which are not specific enough to give fair warning. *See State v. Thurston*, 112 N.H. 288, 293 A.2d 770 (1972).

RSA 630:3, II, warns in clear, specific, and unequivocal terms that one who drives while intoxicated and kills another in consequence thereof commits a felony. Bailey's alleged conduct, therefore, if proven, unquestionably constitutes a crime. With respect to any other well-defined offense in the Criminal Code, an accomplice to the proscribed offense is as culpable as the principal. *See* RSA 626:8. Further, both the negligent homicide and accomplice liability statutes were enacted well before the fatal accident in question occurred, and thus provided sufficient notice to Etzweiler.

## B. *Bailey*

The following question is presented: Does a statutory scheme that makes the same conduct punishable by a thirty-year maximum sentence under RSA 630:2, II (Supp. 1983), or by a seven-year maximum sentence under RSA 265:79 (Supp. 1983), in the discretion of the prosecutor, violate the equal protection guarantees of the New Hampshire and United States Constitutions? This inquiry will also reach the question whether this statutory scheme violates part I, article 18 of the New Hampshire Constitution, which requires that criminal penalties must be proportionate to the offense committed. We should hold that each statute proscribes the identical conduct. However, the pertinent statutory scheme is not violative of the equal protection guarantees of the State and Federal Constitutions. Further, for the reasons set forth herein, it is not necessary to decide the question whether the statutory scheme violates part I, article 18 of the New Hampshire Constitution.

The parties agree that Bailey was indicted under the manslaughter statute, RSA 630:2, I(b) (Supp. 1983), for recklessly causing the deaths of Kathryn and Nathan Beaulieu. Manslaughter is punishable by imprisonment for a maximum of thirty years. RSA 630:2, II (Supp. 1983). RSA 626:2, II(c), defines recklessly as follows:

> "A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the circumstances known to him, its disregard constitutes a gross deviation from the conduct that a law-abiding person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of having voluntarily engaged in intoxication or hypnosis also acts recklessly with respect thereto."

Bailey argues that the reckless driving with death resulting statute, RSA 265:79 (Supp. 1983), proscribes the same conduct as does the manslaughter statute. RSA 265:79 (Supp. 1983) states that "[i]f the death of any person results from reckless driving of a vehicle, the person convicted of such reckless driving shall be guilty of a class B felony." The offense of reckless driving is established by proof that a person "upon any way drives a vehicle recklessly, or so that the lives or safety of the public shall be endangered, or upon a bet, wager or race, or . . . for the purpose of making a record." RSA 265:79 (Supp. 1983). Reckless driving with death resulting is punishable by imprisonment for a maximum of seven years. RSA 265:79 (Supp. 1983).

According to the literal meaning of the statute, see RSA 21:2, the felony of driving recklessly with the result of causing death is demonstrated upon proof of reckless driving. There is, however, no indication in the body of the statute that when death is the consequence of reckless driving, the death itself must have been caused recklessly. However, prior case law appears to have interpreted RSA 265:79 (Supp. 1983) to require proof of recklessness with respect to both the act of driving and the resulting death.

In State v. Soucy, 97 N.H. 233, 234, 84 A.2d 838, 840 (1951), this court defined the statutory violation of operating a motor vehicle recklessly as "[s]omething more than mere negligence." The court was construing chapter 118, section 12 of the Revised Laws of 1942, now codified in part at RSA 265:79 (Supp. 1983). The court concluded that to establish the offense of reckless driving, the "vehicle must be operated under such circumstances, and in such a manner, as to show a willful or reckless disregard of consequences." 97 N.H. at 234, 84 A.2d at 840; see State v. Yosua, 91 N.H. 181, 182, 16 A.2d 370, 371 (1940) (in case involving reckless driving of an automobile resulting in a death, the trial court's final jury instruction stated that recklessness means "indifference to consequences").

Under RSA 630:2, I(b) (Supp. 1983), to establish manslaughter, the State must sustain its burden of proving that the defendant recklessly caused the death of another. Although it is clear from the literal meaning of the statute that proof of recklessness must go to the result of death, the language of the statute does not explicitly indicate whether the State must also prove that the defendant's conduct itself was reckless.

RSA 626:2, I, is instructive. It provides that "[w]hen the law defining an offense prescribes the kind of culpability that is sufficient for its commission, without distinguishing among the material elements thereof, such culpability shall apply to all the material elements, unless a contrary purpose plainly appears." (Emphasis added.)

Accordingly, in the offense of manslaughter under RSA 630:2, I(b), the *mens rea* of recklessness applies to both the defendant's conduct and the result of his conduct. The requirements of RSA 626:2 apply equally to criminal offenses which are proscribed outside the Criminal Code, RSA 625:7, including reckless driving with death resulting, RSA 265:79 (Supp. 1983). Therefore, the felony of driving recklessly with death resulting is established upon proof both that the act of driving was reckless and that the resulting death was caused recklessly.

In view of this application of RSA 626:2 to the statutory offenses in question, we should conclude that each material element of the felony of manslaughter, RSA 630:2, I(b), and of the felony of reckless driving with death resulting, RSA 265:79 (Supp. 1983), is identical. Thus, a defendant indicted for manslaughter under RSA 630:2, I(b), is not entitled to a lesser-included charge of reckless driving with death resulting, since the essential issues to be resolved by the jury are the same as to both offenses. In this jurisdiction, a lesser offense must be included within but not completely encompassed by the greater offense. *See State v. Merski*, 123 N.H. 564, 567, 465 A.2d 491, 493 (1983). Therefore, a lesser-included offense instruction is only proper when the charged greater offense requires the jury to resolve a disputed element that is not required for conviction of the lesser-included offense. *See id.*

The court's analysis of RSA 265:79 (Supp. 1983), which concludes that proof of recklessness goes to the act of driving and not to the resulting death, may be defensible on some abstract theoretical ground. However, in practical terms, the court is creating distinctions without real differences, distinctions which our trial court juries will find baffling.

The court opines that a driver may act recklessly with regard to certain "forbidden harms," but not as to others, including death. That is, the court holds that under certain circumstances a driver who operates his car recklessly may selectively disregard certain consequences involving "injury to the safety, rights or property of human beings," but may choose not to disregard the consequence of death. A driver does not perform selective risk assessment, weighing and then discarding the possible forbidden consequences of his conduct, instantly upon operating his car recklessly. The act of driving a car becomes reckless when a driver recklessly disregards *all* the harmful consequences of his conduct, including death.

In construing the equal protection guarantees of the State Constitution, reference to federal cases is for guidance only. *See State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983).

The New Hampshire Constitution guarantees every citizen equal protection of the laws. *See* N.H. CONST. pt. I, art's 2 and 15. In construing the federal equal protection clause, this court held that "[a]lthough equal protection of the laws does not require complete equality in the face of factual differences, it does mandate that those who are similarly situated be similarly treated." *Belkner v. Preston*, 115 N.H. 15, 17, 332 A.2d 168, 170 (1975).

When a person's conduct violates more than one criminal statute, the State has the broad discretion to prosecute under either statute, *State v. Bergeron*, 115 N.H. 70, 72, 333 A.2d 721, 723 (1975), so long as it does not discriminate against any class of persons. *See United States v. Batchelder*, 442 U.S. 114, 123–24 (1979). The State's selection of which criminal law to enforce is subject to constitutional restraints. *See id.* at 125.

The equal protection guarantees prohibit selective enforcement of our criminal laws based upon such unjustifiable standards as race, religion, or other arbitrary classifications. *See Oyler v. Boles*, 368 U.S. 448, 456 (1962). When there is proof that the State's decision to prosecute under a selected criminal statute was motivated by vindictiveness, *see United States v. Goodwin*, 457 U.S. 368 (1982); *see also State v. Novosel*, 120 N.H. 176, 181, 412 A.2d 739, 743 (1980), or by other improper considerations that support a finding of prosecutorial abuse that prejudiced the defendant, *see United States v. Batchelder, supra* at 125; *see also State v. Bergeron supra,* a verdict favorable to the State may be set aside on appeal.

In *United States v. Batchelder supra,* the United States Supreme Court held that when exactly the same criminal conduct is punishable under two statutes with different penalties the prosecutor may constitutionally elect to prosecute under one rather than the other. *Id.* The *Batchelder* court rejected the defendant's argument that a prosecutor's discretion to selectively enforce either statute was "unfettered," in view of the "constitutional constraints" on prosecutorial discretion. *Id.* at 124–25. The court was unable to distinguish between the discretion exercised by a prosecutor under a statutory scheme when "deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements . . . . The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation" of the equal protection guarantees. *Id.* at 125.

The expression of legislative intent in the body of the reckless driving with death resulting statute, RSA 265:79 (Supp. 1983), that "[t]his section shall not be construed to limit or restrict prosecution for manslaughter," suggests that the legislature created a statutory

scheme to enable the State, in its discretion, to prosecute under either statute. The comment of Senator Bradley in Senate proceedings concerning the reckless driving section of the motor vehicle laws confirms the interpretation that the legislature intended to preserve the discretionary authority of prosecutors to enforce either the Criminal Code or the reckless driving with death resulting provisions of the motor vehicle laws:

> "It is the feeling of law enforcement people that this particular penalty for reckless operation should be preserved in substance not withstanding [sic] the provisions of the criminal codes which go in effect on November 1."

N.H.S. Jour. 1009–10 (1973).

On the basis of the record before this court, the indictment of Bailey for manslaughter under RSA 630:2, I(b), does not constitute an abuse of prosecutorial discretion that prejudiced Bailey. Bailey does not allege that the indictments were motivated by any improper considerations which support a finding of a denial of equal protection. In view of this adoption of the United States Supreme Court's analysis of the constitutionality of prosecutorial discretion in *Batchelder*, we should not conclude, as a matter of law, that the indictments on their face raise the specter of abuse of prosecutorial discretion prohibited by our State constitutional guarantees of equal protection. Therefore, we should conclude that the statutory scheme in question does not violate the equal protection guarantees of the State Constitution and the Equal Protection Clause of the Federal Constitution.

The question remains whether the pertinent statutory scheme, which makes the same identical offense punishable by separate and distinct penalties, violates part I, article 18 of the New Hampshire Constitution requiring that criminal penalties must be proportionate to the offense committed.

This court has suggested that a *sentence* must be "grossly disproportionate to the crime" to violate part I, article 18 of the New Hampshire Constitution. *State v. Dumont*, 122 N.H. 866, 867, 451 A.2d 1286, 1287 (1982) (quoting *State v. Wheeler*, 120 N.H. 496, 499, 416 A.2d 1384, 1386 (1980)). The pertinent constitutional language sanctions "punishment" conferred to reform the criminal and to deter repetition of the offense committed both by the defendant on trial and others. *See State v. Wentworth*, 118 N.H. 832, 842, 395 A.2d 858, 865 (1978). Part I, article 18 of the State Constitution states in part that:

> "[w]here the same undistinguishing severity is exerted against all offenses, the people are led to forget the real

distinction in the crimes themselves, and to commit the most flagrant with as little compunction as they do the lightest offenses . . . . The true design of all punishments [is] to reform, not to exterminate mankind."

To determine whether a punishment is "grossly disproportionate" to the offense committed, a defendant must have been convicted of criminal conduct and a sentence imposed. *See State v. Wentworth, supra* at 842–43, 395 A.2d at 865. Without a record to review, this court cannot resolve the constitutionality of a punishment by inquiring into the gravity of the offense committed and the harshness of the penalty conferred. *See Solem v. Helm,* 103 S. Ct. 3001, 3010 (1983). In addition, absent the lower court transcript, we cannot determine whether the trial judge "failed to consider the individual defendant in imposing sentence or [whether] the court rested the sentence on impermissible grounds." *State v. Wentworth, supra* at 843, 395 A.2d at 865.

We cannot conclude on the basis of the existing record that the statutory scheme in question would result in the imposition of an unconstitutional sentence on Bailey. Indeed, the instant case is here on interlocutory appeal; there has been no trial, no conviction, and no sentence imposed.

In *State v. Wheeler, supra* at 499, 416 A.2d at 1386, this court, for reasons of judicial economy, considered the constitutionality of a superior court sentence five times greater than that imposed by the district court, although the case was remanded for a new trial. *Id.* Although this court conceded that the constitutionality of the sentence was temporarily moot, the court discussed the sentence because of the "possibility that the defendant's new trial might again result in a conviction." *Id.* In the case at bar, no sentence has been imposed, and it would not be judicious to review the range of possible sentences that may result from the trial of Bailey under the statutory scheme in question.

Therefore, it is not necessary to decide the question whether the pertinent statutory scheme violates part I, article 18 of our State Constitution.