Belknap
No. 2002-641

## THE STATE OF NEW HAMPSHIRE

v.

## ROBERT DONOHUE

Argued: September 11, 2003
Opinion Issued: October 24, 2003

*Peter W. Heed,* attorney general (*Laura E. B. Lombardi,* assistant attorney general, on the brief, and *Stephen Fuller,* senior assistant attorney general, orally), for the State.

*Landya McCafferty,* assistant appellate defender, of Dover, on the brief and orally, for the defendant.

NADEAU, J. The defendant, Robert Donohue, was convicted after a jury trial in Superior Court (*Smukler,* J.) of reckless second-degree assault and conspiracy to commit second-degree assault. *See* RSA 626:8 (1996) (amended 2001); RSA 629:3 (Supp. 2002); RSA 631:2 (1996). Donohue appeals only the conspiracy conviction, arguing that the trial court erred in denying his motion to dismiss the indictment on the ground that one cannot conspire to commit reckless second-degree assault. We reverse the conspiracy conviction.

The jury could have found the following facts. At approximately 1:00 a.m. on March 24, 2001, Jason Lonergan and Christopher Burke left a bar in Laconia. As they were leaving, they noticed a woman crying and asked if she was all right. Meanwhile, the woman's boyfriend, Donohue, left the bar and approached the two men, stating that "she [is] with me, and she's all set." The conversation between Donohue and Lonergan escalated into an argument.

Shortly thereafter, the argument ended and Donohue told Lonergan and Burke that he was going inside to get his brother. Donohue entered the bar and retrieved his half-brother, Joe Gardner. At first, Donohue simply told Gardner, "We've [sic] leavin'." On their way out of the bar, Donohue mentioned to Gardner that there were a couple of guys with whom he had argued and who he thought wanted to fight.

When Donohue and Gardner left the bar, Lonergan and Burke were no longer there. Donohue testified that he and Gardner walked to Donohue's van, which was located in the Citizens Bank parking 'lot. Meanwhile, Lonergan and Burke, who were also walking through the parking lot, heard an angry "hey." When they turned around, Lonergan was punched by Donohue while Burke was punched by Gardner.

As a result of this incident, Donohue was charged with one count of second-degree assault, and one count of conspiracy to commit second-degree assault. The first count alleged that Donohue did in concert with and aided by Gardner, recklessly cause bodily injury to Lonergan. The second count alleged that Donohue, with the purpose that an assault be committed, agreed with Gardner to commit a reckless assault, and committed one or more overt acts in furtherance of the conspiracy. Following a jury trial, he was convicted on both counts.

■ ■ On appeal, Donohue argues that it is legally impossible to be convicted of conspiracy to commit reckless assault because one cannot conspire to recklessly cause a particular harm. He contends that under New Hampshire law, conspiracy requires that the defendant possess a purposeful mental state with respect to every element of the underlying crime. In doing so, Donohue urges us to adopt the position of the Model Penal Code.

> A person is guilty of conspiracy if, with a purpose that a crime defined by statute be committed, he agrees with one or more persons to commit or cause the commission of such crime, and an overt act is committed by one of the conspirators in furtherance of the conspiracy.

RSA 629:3, I. Conspiracy punishes the agreement to commit or cause the commission of a crime. *State v. Chaisson*, 123 N.H. 17, 24 (1983). To establish liability for conspiracy, the State must demonstrate that the defendant had a true purpose to effect the criminal result. *State v. Ayer*, 136 N.H. 191, 194 (1992).

Here, Donohue was charged and convicted of conspiracy to commit a reckless second-degree assault. A person is guilty of second-degree assault if he "recklessly causes serious bodily injury to another." RSA 631:2, I(a). "A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." RSA 626:2, II(c) (1996).

■ We have recognized that our Criminal Code is largely derived from the Model Penal Code. *See State v. Dufield,* 131 N.H. 35, 39 (1988). For this reason, we have looked to the Model Penal Code commentaries for guidance when interpreting analogous New Hampshire statutes. *See id.;* *State v. Robidoux,* 125 N.H. 169, 172-74 (1984). Once again, the commentary to the Model Penal Code is instructive. The section concerning conspiracy explains:

> [I]n relation to those elements of substantive crimes that consist of proscribed conduct or undesirable results of conduct, the Code requires purposeful behavior for guilt of conspiracy, regardless of the state of mind required by the definition of the substantive crime. If the crime is defined in terms of prohibited conduct, such as the sale of narcotics, the actor's purpose must be to promote or facilitate the engaging in of such conduct by himself or another. If it is defined in terms of a result of conduct, such as homicide, his purpose must be to promote or facilitate the production of that result. Thus, it would not be sufficient . . . if the actor only believed that the result would be produced but did not consciously plan or desire to produce it.

MODEL PENAL CODE § 5.03 comment 2(c)(i) at 407 (Official Draft and Revised Comments 1985). This commentary makes clear that in order to be guilty of conspiracy, a person must engage in purposeful behavior, even if the underlying crime requires a lower *mens rea.* Here, the State charged Donohue with a reckless assault, which plainly requires a lower standard of culpability than the conspiracy statute. *See* RSA 629:3; RSA 626:2, II(a) (1996) ("A person acts purposely with respect to a material element of an offense when his conscious object is to cause the result or engage in the conduct that comprises the element.").

■ The Model Penal Code commentary also addresses substantive crimes that involve a reckless state of mind:

> [W]hen recklessness or negligence suffices for the actor's culpability with respect to a result element of a substantive crime, as for example when homicide through negligence is made criminal, there could not be a conspiracy to commit that crime. This should be distinguished, however, from a crime defined in terms of conduct that creates a risk of harm, such as reckless driving or driving above a certain speed limit. In this situation the conduct rather than any result it may produce is the element of the crime, and it would suffice for guilt of conspiracy that the

> actor's purpose was to promote or facilitate such conduct — for
> example, if he urged the driver of the car to go faster and faster.

MODEL PENAL CODE § 5.03 comment 2(c)(i) at 408. This section of the commentary explicitly recognizes that one cannot conspire to commit a crime where mere recklessness or negligence with respect to a result element suffices for the actor's culpability. *See also* W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 12.2(c) at 278 (2d ed. 2003) ("[T]here is no such thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently causing a result.").

Numerous state courts have followed the reasoning set forth in the Model Penal Code to conclude that one cannot conspire to accomplish an unintended result. *See People v. Swain*, 909 P.2d 994, 997-1001 (Cal. 1996) (conspiracy to commit reckless murder not a crime); *Palmer v. People*, 964 P.2d 524, 528-30 (Colo. 1998) (conspiracy to commit reckless manslaughter not a crime); *State v. Beccia*, 505 A.2d 683, 684-85 (Conn. 1986) (conspiracy to commit reckless arson not a crime); *Conley v. State*, 247 S.E.2d 562, 565 (Ga. Ct. App. 1978) ("One cannot conspire to kill another in the heat of passion."); *Mitchell v. State*, 767 A.2d 844, 847, 854-55 (Md. 2001) (conspiracy to commit a "non-premeditated" murder not a crime); *People v. Hammond*, 466 N.W.2d 335, 336-37 (Mich. Ct. App. 1991) (conspiracy to commit second-degree murder not a crime); *State v. Baca*, 950 P.2d 776, 787-88 (N.M. 1997) (conspiracy to commit reckless murder not a crime).

The State relies heavily on the holdings in *State v. Horne*, 125 N.H. 254, 256 (1984), and *State v. Locke*, 144 N.H. 348, 352-53 (1999), for the proposition that one can conspire to commit a reckless assault. In *Horne*, we wrestled with the interpretation of RSA 626:8, III and IV (Supp. 1983) as they related to the conviction of an accomplice for reckless second-degree assault. Section III states:

> A person is an accomplice of another person in the commission of an offense if:
>     (a) With the purpose of promoting or facilitating the commission of the offense, he solicits such other person in committing it, or aids or agrees or attempts to aid such other person in planning or committing it . . . .

Section IV states:

> When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of

culpability, if any, with respect to that result that is sufficient for the commission of the offense.

*Horne*, 125 N.H. at 256 (quotation omitted). We quoted *State v. Etzweiler*, 125 N.H. 57, 63 (1984), which concluded that:

Section III sets forth the elements which must be present above, beyond, and regardless of the substantive offense. Section IV sets forth the elements of the substantive offense that must be present in order to charge the accomplice . . . . Under section III, the State has the burden of establishing that the accomplice acted with the purpose of promoting or facilitating the commission of the substantive offense.

*Horne*, 125 N.H. at 256 (quotation omitted). In reading sections III and IV together with *Etzweiler*, we concluded that RSA 626:8, III and IV are interconnected, and that the elements in section III must be alleged and proven by the State in order to establish accomplice liability. *Id.* In reaching this conclusion, we endorsed the idea that one can be an accomplice to crimes requiring proof of recklessness as to a result element. *See id.*

In *Locke*, we reinforced the principle that one can be an accomplice to reckless crimes by concluding that "a person can act with the purpose of promoting or facilitating the commission of a reckless homicide and thus be charged as an accomplice to such crime." *Locke*, 144 N.H. at 353.

■ These cases involving accomplice liability for reckless conduct, however, are distinguishable from conspiracy to commit a reckless act. Conspiracy is an inchoate crime that does not require the commission of the substantive offense that is the object of the conspiracy but rather fixes the point of legal intervention at the time of the agreement to commit a crime coupled with an overt act in furtherance of the conspiracy. *See* RSA 629:3; MODEL PENAL CODE § 5.03 comment 1, at 387; *Swain*, 909 P.2d at 996. By contrast, accomplice liability is not a separate and distinct crime, but rather holds an individual criminally liable for actions done by another. *See* RSA 626:8; *Etzweiler*, 125 N.H. at 63-65.

The Model Penal Code commentary distinguishes conspiracy from accomplice liability with respect to recklessly causing a particular result by explaining:

As to the liability of one who renders aid for the completed crime . . . when causing a particular result is an element of a crime, a person is an accomplice in the crime if he was an accomplice in the behavior that caused the result and shared the same purpose

> or knowledge with respect to the result that is required by the definition of the crime.

MODEL PENAL CODE § 5.03 comment 2(c)(i) at 408.

■ A person cannot be guilty of conspiracy to commit a reckless assault because an assault, like a reckless manslaughter, is controlled by the resulting harm. *Cf. Etzweiler*, 125 N.H. at 66-67; MODEL PENAL CODE § 5.03 comment 2(c)(i) at 408. In other words, a person cannot agree, in advance, to commit a reckless assault, because, by definition, a reckless assault only arises once a future harm results from reckless behavior. *See* MODEL PENAL CODE § 5.03 comment 2(c)(i) at 408. In this case, since there was no agreement to cause the particular harm that resulted, the defendant cannot be guilty of conspiracy to commit reckless assault. *See id.*

■ Accordingly, we adopt the view of the Model Penal Code that one cannot conspire to commit a crime where the culpability is based upon the result of reckless conduct. In doing so, we conclude that the State cannot charge a person under RSA 629:3 for conspiracy to commit a reckless second-degree assault. Here, the State alleged that Donohue, with the purpose that an assault be committed, agreed with Gardner to commit a reckless assault, and committed one or more overt acts in furtherance of this conspiracy. Based on the above reasoning, this indictment fails to allege facts that, if proven, would constitute a cognizable crime. Because the trial court erred in denying Donohue's motion to dismiss the indictment, we reverse the conspiracy conviction.

*Reversed.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.